IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SONDRA M. JONES,            )
                            )
              Plaintiff,    )
                            )
v.                          )   Case No. CIV-06-495-KEW
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security Administration,    )
                            )
              Defendant.    )

**OPINION AND ORDER**

Plaintiff Sondra M. Jones, (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED AND REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C.

1

§423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

Claimant was born on December 5, 1959, and was 45 years old at the time of the hearing. She has a high school education. Claimant previously worked as a sewing machine operator and tattooist. Claimant alleges an onset date for disability of July 17, 1996, due to vascular headaches, post traumatic stress disorder, depression, and seizures.

**Procedural History**

On May 27, 1997, Claimant filed for Supplemental Security Income under Title XVI of the Social Security Act. (42 U.S.C. § 1481, et seq.) Claimant's application for benefits was denied in its entirety initially and upon reconsideration. A hearing before ALJ R.J. Payne was held on July 14, 1999 in Tulsa, Oklahoma. By decision dated September 20, 1999, the ALJ found that Claimant was not disabled at any time through the date of the decision. On May 30, 2002, the Appeals Council denied Claimant's request for review of the ALJ's findings. On March 1, 2004, United States District Court for the Eastern District of Oklahoma reversed and remanded the case for further administrative proceedings. On February 25, 2004, the Appeals Council vacated the final decision of the Commissioner in this case and remanded the case to an ALJ for further proceedings consistent with the order of the court.

A hearing before ALJ Gene M. Kelly was held on October 19, 2004 in Tulsa, Oklahoma. By decision dated November 22, 2005, the ALJ found that Claimant was not disabled at any time through the date of the decision. On September 18, 2006, the Appeals Council denied review of the ALJ's findings. Thus, the decision represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that

while Claimant's medical conditions were severe, they did not meet a Listing and she retained the residual functional capacity ("RFC") to perform sedentary to light work. Although Claimant was unable to perform her past relevant work, she could perform other work existing in the national and regional economy.

**Review**

Claimant asserts the ALJ committed error requiring reversal in failing to: (1) grant a supplemental hearing; (2) inquire concerning inconsistencies between the Dictionary of Occupational Titles ("DOT") and the testimony from the Vocational Expert ("VE"); (3) give appropriate weight to Claimant's treating physician's opinion; (4) perform a proper determination at steps two and three of the sequential analysis; and (5) engage in a legally sufficient credibility analysis.

**Due Process**

Claimant initially contends the ALJ erred by relying on post-hearing reports without affording her an opportunity for a supplemental hearing. She argues the ALJ's use of post-hearing reports constitutes a denial of due process because the opportunity for cross-examination of the witnesses was subverted.

Claimant's hearing before the ALJ was on October 19, 2004. After the October hearing, the ALJ determined that additional information was necessary. Consultative evaluations were obtained pursuant to the ALJ's request from Dr. Subramanium Krishamurthi dated December 23, 2004, Larry Vaught, Ph.D dated December 14, 2004, and Alison Hansen, O.D. These reports were forwarded to Claimant's attorney on January 20, 2005 noting the Claimant could submit written comments, submit additional interrogatories, or request a supplemental hearing. The ALJ

4

allowed ten days from the receipt of the letter to make the request. (Tr. 567-568). Additional records from the Oklahoma Department of Rehabilitative Services were forwarded to Claimant's attorney on January 31, 2005 with an offer for a supplemental hearing if requested within ten days. On March 23, 2005, Claimant's attorney requested a supplemental hearing in response to the consultative examinations from Dr. Krishnamurthi and Dr. Hansen, as well as the assessments from Oklahoma Department of Rehabilitative Services. (Tr. 571-572). The record does not reflect that a supplemental hearing was scheduled pursuant to the request. On August 11, 2005, the ALJ again forwarded the consultative examinations to the Claimant's attorney with the offer to schedule a supplemental hearing if requested within ten days. (Tr. 574). The ALJ issued his decision denying benefits on November 22, 2005 which included a discussion of the consultative evaluations. (Tr. 527-539).

It is well-established that "[a]n ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross examine the physician or to rebut the report." Allison v. Heckler, 711 F.2d 145, 147 (10th Cir. 1983). Although a timely request for a supplemental hearing was not made subsequent to the receipt of both reports in January, 2005, a request was filed by Claimant prior to the August offer to schedule a supplemental hearing. This request was seemingly ignored by the ALJ and the decision was rendered without any additional information from Claimant with respect to the post-hearing reports from Dr. Krishnamurthi and Dr. Hansen. Due process requires that Claimant must be provided with the opportunity to cross-examine these physicians.

**Step Five Determination**

At step five of the sequential analysis, the burden of proof shifts to the Commissioner "to show that the claimant retain[ed] sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005). Relying on testimony from a vocational expert ("VE"), the ALJ found that Claimant could perform the jobs in the national economy which included an order clerk, clerical mailer, and semi-conductor assembler. (Tr. 536-537).

Here, the ALJ found that Claimant retained the RFC to perform the following basic work activities:

> occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She is able to stand and/or walk 6 hours in an 8-hour workday at 30 minute intervals and can sit for 6 hours in an 8-hour workday at 2 hour intervals. The claimant would be limited in the ability to bend and could occasionally climb, stoop, squat, knee, crouch, crawl, and operate foot controls. She would require an environment with low noise and low light and would need to avoid cold; rough, uneven surfaces; unprotected heights; fast and dangerous machinery; and open flames. The claimant would require easy access to rest rooms. Due to her symptoms of depression, anxiety, post traumatic stress disorder, organic mental disorder, and seizures, the claimant would be limited to simple, routine and repetitive tasks and would be slightly limited in contact with the public, coworkers, and supervisors. The claimant is afflicted with symptoms from a variety of sources, to include mild to moderate, chronic pain, that are sufficiently severe as to be noticeable to her at all times; but, that nonetheless the claimant would be able to remain attentive and responsive in a work setting, and could carry out normal work assignments satisfactorily. The claimant takes medication for relief of her symptoms; however, those medications do not preclude her from functioning at her residual functional capacity and she would remain reasonably alert to perform required functions in the work setting. (Tr. 538).

Claimant argues the restriction to work involving simple, routine, and repetitive tasks limits her to jobs with a reasoning level of 1. Claimant contends the ALJ erred by finding she could perform work as an order clerk which requires a reasoning level of 3. She also argues the

ALJ erred by finding she could perform jobs as a clerical mailer or semiconductor assembler due to the restriction of working in a low noise environment. Claimant additionally argues that the ALJ erred by combining the number of jobs available to find significant numbers of jobs.

On its face, the VE's testimony that Claimant could perform work as an order clerk requiring a reasoning level of 3 conflicts with the Dictionary of Occupational Titles' ("DOT") description of that job. Additionally, a conflict exists between the jobs as clerical mailer and semiconductor assembler and the requirement for a low noise environment. The DOT list a moderate noise intensity level for the job as an order clerk. The noise level listed for the job as a semi-conductor assembler was loud.

The Tenth Circuit Court of Appeals has adopted a standard requiring that "when the vocational expert's testimony is either in conflict with the DOT or creates a conflict in the evidence based upon the DOT, the ALJ may nonetheless, rely upon the vocational expert's testimony if the record reflects a substantial reason for deviating from the DOT." Carey v. Apfel, 230 F.3d 131, 144 (10th Cir. 2000). The ALJ failed to acknowledge any conflict between the DOT and the VE's testimony. Further, he failed to elicit any explanation for the conflict. Therefore, as a matter of law, the ALJ was not entitled to rely on the VE's identification of any of the jobs listed to support the Commissioner's burden at step five.

Next, Claimant contends the ALJ erred by relying VE testimony that combined the number of jobs in order to find significant numbers of jobs. The criteria to be considered by an ALJ in the determination of whether work exists in significant numbers includes "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; [and] the

types and availability of such work..." Triamar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992).

Here, the VE testified that the job as semiconductor assembler was calculated as a combination of four to five different jobs in that assembly. (Tr. 797). Without this combination, the jobs when considered individually would not be considered "significant numbers" required to sustain the burden of proof required at step five. (Tr. 798-799).

The record fails to establish the ALJ considered all of the relevant factors at step five of the sequential analysis. On remand, specific testimony from the VE shall be elicited listing the numbers of any jobs without a combination of parts of those jobs unless the parts of the jobs would constitute significant numbers.

## Treating Physician

Claimant argues the ALJ failed to properly analyze the opinion of her treating physician, Randall Kemp, D.O. Additionally, Claimant contends the ALJ did not include all the physical limitations found by James R. Crouch, Jr., M.D., Ph.D., in his work capacity assessment.

At the hearing held in 1999, Claimant testified Dr. Kemp was her primary physician. She stated that she began treating with Dr. Kemp on July 17, 1996 and had received continuing treatment at least four to five times per month. (Tr. 738). The ALJ noted that all of the medical records documenting Claimant's treatment with Dr. Kemp had not been submitted. Consequently, the ALJ left the record open for a period of seven days to obtain these additional medical records. (Tr. 739).

The record contains medical records from the Okemah Family Clinic bearing the signature of Dr. Robert Lovell from October 17, 1996 through June 5, 1997 (Tr. 217- 243) and

8

June 17, 1997 through August 26, 1997. (Tr. 274-278). Medical records from Dr. Randall L. Kemp document Claimant's treatment from May 22, 1997 through October 8, 1998 (Tr. 373-380), and October 5, 1998 through April 19, 1999. (Tr. 400-403). Additional records were submitted from Claimant's attorney covering the period from July 29, 1999 through April 13, 2000. (Tr. 454- 456). Dr, Kemp completed an assessment of Claimant's limitations imposed by both migraines and seizures on May 5, 2005. He described Claimant's migraines with "piercing pain 1hr to 72 hours in durations with severe pain and photophobia. (+) stress triggers." She had "[s]eizures 2-5 [times] /wk some lasting 2-15 mins. During this period and 30 minutes after pt is confused, incontinent and unable to function." Claimant would experience frequent absences from work "10-15 days/ month incapacitated." Objective medical evidences supporting his conclusions included an "abnormal EEG [with] dystonia of rt leg that worsen[s] [with] seizure activity. (Tr. 691). A Residual Functional Capacity To Do Work Related Activities was completed May 4, 2005. In his assessment, Dr. Kemp opined Claimant could sit, stand, and walk for 10- 30 minutes. She could occasionally lift and carry between six and ten pounds. She was limited in the use of her right hand for grasping and right feet in pushing and pulling leg controls. She was unable to bend and climb. She was limited to occasional squatting, crawling, reaching, handling with her hands and fingering with her right hand. Claimant had a total restriction on activities involving unprotected heights, being around moving machinery, exposure to marked changes in temperatures and humidity, exposure to dust, fumes, and gases, and driving. Moderate restrictions were placed on Claimant's ability be around vibrations. (Tr. 693-697).

The record also indicates Claimant was referred for a consultative eye examination with

Vidya Be. Rege on June 27, 2008. Historically, Dr. Rege noted Claimant "has had epilepsy since 1995. She use to get seizures 3-4 everyday. At present with medication, it is lot better but still gets once a month. She also had migraine and gets headaches everday." (Tr. 699).

Although the ALJ did not articulate the weight attributed to the reports from Dr. Kemp, he does find "[t]he evidence of record reflects that prior to completing the RFC on May 4, 2005, the last time Dr. Kemp had contact with the claimant was July, 2001, when a medication refill was called in. While Dr. Kemp indicated that the claimant was limited to lifting and carrying only 10 pounds, Dr. Kemp also stated that the claimant had several seizures a week; however, the claimant related to Dr. Rege that she was having seizures once a month. It appears that Dr. Kemp based his assessment on the claimant's subjective complaints and the undersigned is persuaded that the claimant's complaints are not consistent." (Tr. 536).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (Quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is nto entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors referenced in that section are" (1) the length of the treatment relationship, including the treatment provided

10

and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. At 1300-10 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527 (d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004) (citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted). Additionally, "[w]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physician's reports to see if they outweigh the treating physician's report, not the other way around." Goatcher v. United States Dep't of Health & Human Servs, 52, F.3d 288, 290 (10th Cir. 1995). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from report of individual examinations or brief hospitalizations." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003)

Upon review, the Court lacks any explanation for the weight actually attributed to the opinion from Dr. Kemp. On remand, the ALJ is directed to discuss the weight given to this assessment and to consider the diminished weight to be accorded to non-treating, non-examining physicians. The Tenth Circuit has long held that "findings of a nontreating physician based upon

11

limited contact and examination are of suspect reliability." Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). Accordingly, any perceived inconsistency between a treating physician and the historical note included in a consultative eye examination would not be sufficient to sustain the high burden of proof required to disregard the treating physician's opinion.

Claimant also contends the ALJ erred by failing to discuss the weight attributed to the opinion of James R. Couch, Jr. Claimant was evaluated on January 21, 1998 at the University Hospital Neurology Clinic with complaints of headaches, seizures, and dystonic posturing of the right foot. On examination, "[c]ranial nerve examination is intact. Motor evaluation shows no evidence of loss of strength. Sensory examination is intact. Coordination reveals the patient to have tonic inversion of her right foot which is partially corrected by an ankle foot orthosis type of case. The patient has difficulty walking because of the foot dystonia." (Tr. 503). He opined Claimant diagnoses were "[f]ocal dystonia involving the right foot with inversion of the foot. This condition make it difficult for the patient to walk and would make it extremely difficult for her to operate a sewing machine of the type that she had previously operated." Additionally, Dr. Couch found "the patient would be considered disabled for the job she has held related to the focal dystonia of the right foot. This also will limit her mobility, as attempts to ambulate are noted to enhance the patient's dystonia." (Tr. 504).

Here, the ALJ failed to discuss the opinion expressed by Dr. Couch and the weight attributed to his reports. On remand shall discuss the weight attributed to these reports with the understanding that the term of "medical opinions" are reserved for "judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] still do despite impairment(s) and [her] physical and mental restrictions." 20 C.F.R. §

12

404.1527(a)(2). In contrast, judgments that go beyond purely medical findings to reach "issues reserved to the Commissioner are not medical opinions." 20 C.F.R. § 404.1527(e).

**Step Two and Step Three Determinations**

Next, Claimant argues the ALJ erred by failing to make the appropriate determinations at step two and step three of the sequential analysis. Claimant contends the step two determination was deficient by failing to include limitations resulting from a somatoform disorder or a "probable conversion disorder". Claimant also argues the ALJ did not consider the combined effect of her impairments and any mental impairments that she may have. Because the ALJ failed to include these limitations in his step two determination, Claimant asserts the ALJ erred in his step three analysis.

Step two of the sequential analysis requires a determination of whether a claimant's alleged impairment(s) are "severe." 20 C.F.R. § 404.1520(a),(4)(ii), (c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's} physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Only "slight" impairments, imposing only a "minimal effect on an individual's ability to work are considered not severe":

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled " is made [at step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered.

Soc. Sec. R. 85-88.

In light of these definitions, case law requires a very limited role for step two analysis.

Step two is designed to eliminate from consideration at the early stages of the administrative process those individuals who could not possibly meet the statutory definition of disability. Bowen v. Yuckert, 482 U.S. 137, 156 (1987). While the "mere presence of a condition or ailment" is insufficient to move past step two, a claimant is required only to make a "de minimus" showing of impairment to proceed on to the further steps in the analysis. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

Here, the ALJ determined Claimant's impairments limited her to "sedentary and light work activity. The claimant is able to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She is able to stand and/or walk 6 hours in an 8-hour workday at 30 minute intervals and can sit for 6 hours in an 8-hour workday at 2-hour intervals. The claimant would be limited in the ability to bend and could occasionally climb, stoop, squat, knee (sic), crouch, crawl, and operate foot controls. She would require an environment with low noise and low light and would need to avoid cold; rough, uneven surfaces; unprotected heights; fast and dangerous machinery; and open flames. The claimant would require easy access to rest rooms. Due to her symptoms of depression, anxiety, post traumatic stress disorder, organic mental disorder, and seizures, the claimant would be limited to simple, routine and repetitive tasks and would be slightly limited in contact with the public, coworkers, and supervisors. The claimant is afflicted with symptoms from a variety of sources, to include mild to moderate, chronic pain, that are sufficiently severe as to be noticeable at time; but, that nonetheless the claimant would be able to remain attentive and responsive in the work setting, and could carry out normal work assignments satisfactorily." (Tr. 536).

As previously discussed, the ALJ erred by failing to discuss the weight attributed to the

opinion expressed by Claimant's treating physician, Dr. Kemp. Absent an assessment of the weight attributed Dr. Kemp's opinion, this Court is precluded from a meaningful appellate review of any discrepancy between Dr. Kemp's RFC assessment and the RFC determination by the ALJ. Clearly, Dr. Kemp found limitations in the ability of walk and operate foot controls that were not included in the ALJ's RFC determination. (Tr. 691, 693-697). Additionally, the medical reports from Dr. Couch include documentation supporting limitations in the ability to walk and operate foot controls. (Tr. 503). Again, the ALJ erred by failing to discuss the limitations found by Dr. Couch. On remand, the ALJ is directed to discuss the opinions of these physicians and explain the weight attributed to their opinions. Additionally, the ALJ is directed to address and discrepancies between his findings at steps two and three of the sequential analysis and the limitations found by Dr. Kemp and Dr. Couch.

## Credibility Determination

Claimant final allegation of error contends the ALJ erred by failing to perform a proper credibility determination. Here, the ALJ found "[t]he claimant's statement concerning her impairments, symptoms, and limitations and their impact on her ability to work are of limited credibility in light of the discrepancies between the claimant's assertions and information contained in the documentary report. On August 25, 1997, Dr. Herman Jones, Ph.D., neuropsychologist with the University Hospital, stated that he and the claimant had discussed at length the secondary gain she received from the somatization of her distress. He noted that while she verbalized that she wished to cease that symptomatology, it remained difficult for her to do so because of the secondary gain." (Tr. 533-534). The ALJ observed what he perceived as discrepancies between Claimant's allegations and the documentation in the medical records.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determination are peculiarly in the province of the finder of fact," and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; WL 374186, 3. Although the ALJ is not required to perform a formalistic factor-by-factor recitation of the evidence, some evidence must be set forth stating the specific evidence relied upon in evaluating Claimant's credibility. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

After a thorough review of the record, this Court cannot find that the ALJ failed to comply with the limited requirements required by the law to support his credibility determination.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the

correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 24th day of March, 2008.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma